UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE J. DILLOWAY,                      Case No. 18-13424

                    Plaintiff,           Marianne O. Battani
v.                                       United States District Judge

COMMISSIONER OF SOCIAL                   Michael J. Hluchaniuk
SECURITY,                                United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 23)**

## I.    PROCEDURAL HISTORY

A.    Proceedings in this Court

On November 1, 2018, plaintiff Denise J. Dilloway filed the instant suit. (ECF No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O. Battani referred this matter to Magistrate Judge R. Steven Whalen for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income.  (ECF No. 3).  The case was later reassigned and referred to the undersigned to review the Commissioner's unfavorable decision.  (ECF No. 29).  This matter is before the Court on cross-motions for summary judgment.  (ECF Nos. 16, 23).

B.    Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on September 8, 2015, alleging disability beginning on January 29, 2015.  (Tr. 15).[1] The claims were initially disapproved by the Commissioner on March 7, 2016.  Plaintiff requested a hearing and on November 8, 2017, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") James E. MacDonald, who considered the case *de novo*.  (Tr. 15-26).  In a decision dated February 8, 2018, the ALJ found that plaintiff was not disabled.  (Tr. 26).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 21, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

This matter is now ready for report and recommendation.  The undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

## II.    BACKGROUND & ALJ'S DECISION

Dilloway, born November 17, 1969, was 45 years old on the alleged

disability onset date.  (Tr. 25).  She had past relevant work as a licensed practical

nurse.  (Tr. 21).  She has an Associate's Degree and is a certified licensed practical

nurse.  (Tr. 40).  She was involved in two car accidents, the latest in 2013, which

caused problems in her neck and lower back.  She claims she cannot work because

of back and neck pain, kidney stones, stroke risk and narcolepsy.  (Tr. 233).

The ALJ applied the five-step disability analysis and found at step one that

Dilloway had not engaged in substantial gainful activity since January 29, 2015,

the alleged onset date.  (Tr. 17).  At step two, the ALJ found that Dilloway had the

following severe impairments: degenerative disc disease of the cervical spine,

degenerative disc disease of the lumbar spine with radiculopathy, carotid stenosis,

post-concussion syndrome, and depression.  (*Id.*).  However, at step three, the ALJ

found no evidence that plaintiff's impairments singly or in combination met or

medically equaled one of the listings in the regulations.  (Tr. 18-19).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) except she can occasionally
> push/pull with the right lower extremity and bilateral
> upper extremities. She cannot operate foot controls with

the right lower extremity. She can never climb
ladders/ropes/scaffolds, crouch or crawl, but can
occasionally climb ramps/stairs, balance, stoop, and
kneel. There can be no overhead reaching with the
bilateral upper extremities. She can frequently handle
bilaterally. There can be no exposure to extreme cold,
wetness, vibration, unprotected heights and moving
mechanical parts. There can be no commercial driving.
The claimant can understand, remember and carry out
simple, routine tasks with simple work-related decisions
and judgments.

(Tr. 19). At step four, the ALJ found that plaintiff was unbale to perform past

relevant work, but that there were other jobs that existed in significant number in

the national economy that she could perform. The ALJ thereafter denied her

benefits claim. (Tr. 25-26).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Treating Physician Rule

            a.    Parties' Arguments

Plaintiff has a history of neck and back pain, especially following her second motor vehicle accident in 2013. On August 25, 2015, she presented to physical rehabilitation specialist Dr. Paul LaClair. (Tr. 608-11). He assessed some permanent restrictions for her, the majority which the ALJ adopted. However, the

ALJ did not adopt the opinion that plaintiff would need a sit/stand/lay option. (Tr. 610). The ALJ gave that particular opinion little weight concluding that it was not consistent with the evidence, including Dr. Adams' and the State agency physician's opinions. (Tr. 23).

Plaintiff believes the ALJ's weight determination as to the sit/stand/lay opinion is erroneous. (ECF No. 16, PageID.814). According to plaintiff, the opinion of a treating physician is entitled to great weight, and if the opinion is not contradicted, complete deference must be given if it is supported by the medical evidence. (*Id.* at PageID.815). If the ALJ finds the treating physician's opinion is entitled to controlling weight, the ALJ must give good reasons for the weight given. (*Id.* at PageID.816).

Plaintiff insists that Dr. LaClair's opinion is supported by and consistent with the other medical opinions in the record. Dr. Adams agreed that Dr. LaClair's restrictions seemed appropriate. (*Id.* at PageID.817; Tr. 642). Further, the State agency reviewing psychologist, Dr. Starrett, who reviewed plaintiff's medical records, acknowledged that plaintiff would be moderately limited in completing a normal workday without an unreasonable number and length of rest periods. (*Id.*; Tr. 91). This, says plaintiff, does not contradict the sit/stand/lay option opinion. State agency reviewing physician, Dr. Robert Nelson, noted Dr. LaClair's restrictions and gave some weight to them, but stated that the "full limitations

explained by the doctors are not fully attainable in true work setting." (*Id.*; Tr. 88).

Plaintiff believes that what Dr. Nelson is saying is that he was not adopting a

sit/stand/lay option because it could not be accommodated in a work setting, not

because he believed it was not medically necessary for plaintiff to have the

restriction.  (*Id.* at PageID.818).  Thus, plaintiff says Dr. Nelson did not contradict

Dr. LaClair's restrictions.  In sum, according to plaintiff, three doctors agreed that

plaintiff's medical conditions required her to have a sit/stand/lay option.

Despite the apparent agreement among the physicians, the ALJ did not give

the opinion controlling weight.  Plaintiff disputes the ALJ's belief that the medical

evidence does not support Dr. LaClair's sit/stand/lay opinion.  (*Id.* at PageID.819-

23).  She points out statements in the ALJ's decision she believes are inaccurate

recitations of the medical evidence.  (*Id.*).  For example, the ALJ said that her

straight leg raising tests were repeatedly negative and that her reflexes and gait

were repeatedly normal.  (*Id.* at PageID.820-23).  Plaintiff cites positive straight

leg raise tests and abnormal reflex and gait findings to the contrary.  (*Id.*).

The Commissioner, on the other hand, insists that the ALJ properly

evaluated the opinions of Drs. LaClair and Adams, and the decision to reject the

sit/stand/lay restriction is supported by substantial evidence.  The Commissioner

acknowledges that the ALJ is required to provide good reasons for discounting a

treating source opinion, but treating source opinions are accorded great weight

only when they are supported by sufficient clinical findings and are consistent with the evidence.  (ECF No. 23, PageID.849).  Here, the ALJ discounted the sit/stand/lay restriction because it was not consistent with the evidence.  As for the other opinion evidence, the ALJ gave significant weight to consulting physician Dr. Nelson's opinion.  Dr. Nelson determined that plaintiff could perform a reduced range of sedentary work with postural, manipulative, and environmental limitations.

According to the Commissioner, the ALJ's decision is also supported by the treatment records, and by extension, is supported by substantial evidence.  The ALJ discussed the medical evidence, including generally mild findings on imaging and normal sensory, gait, and reflex findings, although plaintiff occasionally had abnormalities in these areas.  The ALJ also noted the repeatedly negative straight leg raise testing and lack of muscle wasting.  (*Id.* at PageID.852).  By October 2016, though she had mild pain and left leg numbness, she did not have any motor or sensory deficits in the lower extremities, and she had good knee reflexes.  (*Id.*; Tr. 22).

Plaintiff claims that Dr. Adams did not contradict Dr. LaClair's restrictions; rather, he said the restrictions seemed appropriate.  The Commissioner contends that Dr. Adams' statement is vague, as there is no indication which of Dr. LaClair's restrictions was deemed appropriate by Dr. Adams.  (*Id.* at PageID.853-

54).  Dr. Adams noted only that he appreciated the input and that the restrictions seemed appropriate.  The Commissioner also argues that plaintiff has not presented any evidence showing that the sit/stand/lay option was supported by the medical evidence, which is her burden to do.  (*Id.* at PageID.855).  As to plaintiff's belief that the ALJ inaccurately recounted some of the medical evidence, the Commissioner disagrees.  According to the Commissioner, the ALJ accurately stated the medical evidence.  (*Id.* at PageID.859-64).

b.    Discussion

As discussed above, plaintiff presented to Dr. LaClair at Comprehensive Pain Specialists on August 25, 2015.  (Tr. 608).  At that time, plaintiff was a new patient to Dr. LaClair, and presented with complaints of neck and low back pain following her two prior car accidents.  Plaintiff told Dr. LaClair that her Fentanyl and Percocet managed her pain, but only if she remained sedentary; she said the medications did little to help her pain if she increased her activity.  Dr. LaClair noted that plaintiff was referred by Dr. Adams, her neurosurgeon, because she was applying for disability and would need restrictions put in place.  (*Id.*).  Dr. LaClair issued the following permanent restrictions: 10-pound lifting maximum, no work above shoulder level, a sit/stand/lay option, no repetitive stair climbing, no commercial driving.  (Tr. 610).  The ALJ adopted all these restrictions except the sit/stand/lay option.  (Tr. 19).

After discussing the objective medical evidence in the record, the ALJ

weighed Dr. LaClair's opinion as follows:

> The claimant's treating physician's Dr. Mark Adams and Dr. Paul LeClair, both feel that the claimant is limited to lifting 10 pounds or less, which is generally consistent with sedentary work. Immediately after her cervical surgery, Dr. Adams reported that she should not bend, lift, twist, had a 5-pound weight limit and should not drive for 2 weeks (B6F). During her first postoperative follow-up the month after surgery, he reported that she should not push/pull, bend, twist, lift more than 10 pounds, and that she can drive but she should wear a collar or brace when in a car or walking (B6F). Dr. LeClair felt that the claimant is permanently restricted to no above shoulder work; a sit/stand/lay option; no repetitive stair climbing, and no commercial driving (B7F). Overall, I gave these opinions significant weight when finding that the claimant was limited to sedentary work with some postural, and manipulative limitations. I also noted that neither doctor reported that the claimant requires an assistive device for ambulation. I also considered that when assessing the claimant's residual functional capacity. However, I gave Dr. LeClair's opinions regarding the sit/stand/lay option little weight noting that it was not consistent with the evidence including Dr. Adam's and the DDS opinions.
>
> After reviewing the evidence Dr. Robert Nelson and Dr. George Starrett, the DDS medical and psychological consultants, determined that the claimant could perform a reduced range of sedentary work with postural, manipulative, and environmental limitations that involved simple tasks (B1A, B2A). I found these opinions to be well supported by the evidence and gave them
> significant weight in these findings.

(Tr. 23).

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

In the view of the undersigned, there is no error in the ALJ's weight determination. The ALJ cited the inconsistency of the sit/stand/lay opinion with

the other medical evidence as a reason for giving the opinion little weight.  The
ALJ cited, and the record contains, substantial evidence in support of that weight
determination.  Though plaintiff occasionally had some positive objective findings,
the majority of physical examinations were normal or revealed mild or moderate
abnormalities, as discussed below.

In 2014, before the alleged onset date, her doctors recorded both positive
and negative objective findings in her strength (Tr. 409, 525-26, 529) and reflexes[2]
(Tr. 409, 480, 525-26).  Her gait was recorded as stooped on one occasion (Tr.
529) but stable on another (Tr. 409).  Her straight leg raise testing was negative.
(Tr. 525-26).

She treated with her doctors many times in 2015.  The majority of
objective treatment notes reveal relatively normal findings.  On January 8, 2015,
Dr. Gerold's (her primary care physician) objective findings included tenderness in
the sacral foramen and piriformis bilaterally, and knee and ankle reflexes were 2/3.
(Tr. 479).  However, plaintiff had increased pain with leg raising.  On January 20,
2015, nine days before the alleged onset date, Dilloway presented to the
emergency department for back pain rated at an 8/10.  (Tr. 346).  On physical
exam, she exhibited tenderness in her lower back, normal reflexes, no sensory

---

[2] Her reflexes were found to be 2/4.  A physician at Matrix Pain Management, a clinic plaintiff
attended, noted that deep tendon reflexes that are at least 2+ out 4 are normal.  (Tr. 506).

deficits, 4/5 strength in the left lower extremity, and intact passive range of motion. (Tr. 348).  The next day, she had no tenderness in her spine but limited range of motion in the cervical spine.  She also had negative straight leg raise test, both sitting and lying, no muscle wasting, 5/5 strength in the lower and upper left extremities, 4/5 strength in the lower and upper right, and deep tendon reflexes in the knees, ankles, biceps, and triceps was 2/4.  (Tr. 366).  In a post-cervical operation follow-up on February 4, 2015, she had 5/5 strength in the upper extremities in all areas innervated.  Upper extremity deep tendon reflexes were 2/4, and there was no muscle wasting.  (Tr. 361).  She had 5/5 strength in the lower extremities, 2/4 reflexes, negative straight leg raising test, and no muscle wasting. (Tr. 362).  Later that month, she reported improved symptoms after neck surgery, she had more range of motion in flexion and extension of her neck, normal reflexes, strong motor strength, and normal sensory testing.  (Tr. 476-77).  In neurological examination on February 23, 2015, she had normal range of motion in her neck and musculoskeletal system.  (Tr. 424).  Her strength was 5/5 throughout, but with mild give-way weakness, decreased sensation in the right lateral lower extremity, intact tandem walk, and stable gait, but her upper and lower extremity reflexes were 1/4.  (Tr. 425).

On March 24, 2015, she reported that her neck pain was improving, but that she was still experiencing "right arm symptoms."  She also complained of

numbness and burning pain in her right leg. (Tr. 439). On physical examination, she had normal musculoskeletal range of motion and no tenderness. Neurological examination revealed 5/5 strength throughout with mild give-way weakness, decreased sensation in the right lateral lower extremity, intact tandem walk, 1/4 reflexes, and stable gait. (Tr. 440). In April, Dr. Gerold noted tenderness in the lumbar and sacroiliac spinal areas, as well as piriformis muscle pain. However, there were no motor deficits and knee and ankle reflexes were normal, although she had numbness in her right calf and toes. (Tr. 474). She had positive straight leg raise on May 4th, a slow gait, and trace deep tendon reflexes. (Tr. 570). The next day, plaintiff presented to Matrix Pain Management for her back pain. On physical examination, her back was tender with pain with some movement. Straight leg raising test was positive on the right and she had an antalgic gait. But, she also had normal "conventional walking," 4/5 motor strength in tested areas, and normal left deep tendon reflexes, but 1/4 reflex in the right knee. (Tr. 505-06). The next month, her objective findings included normal musculoskeletal range of motion and no tenderness, 5/5 strength throughout with mild give-way weakness, decreased sensation in the right lower extremity, intact tandem walk, and a stable gait. (Tr. 456). In July 2015, Dr. Gerold found tenderness in the sacroiliac area bilaterally and in the right piriformis muscle. He also found numbness in the right lateral thigh, calf, and toes, but knee and ankle reflexes were normal. (Tr. 472).

On August 3, 2015, Dr. Adams found tenderness in the cervical and lumbar spine, 1/4 tendon reflexes, but negative straight leg raise test, no muscle wasting, and steady gait.  (Tr. 581).  On August 25, 2015, in the treatment record in which Dr. LeClair recorded his restrictive opinion, he found plaintiff to have an antalgic gait on the right side; on inspection of the joints, bones, and muscles, he recorded, "abnormal;" decreased right ankle reflex; and abnormal decreased right L5 sensation.  (Tr. 609-10).  The next record is from October.  Therein, Dr. Gerold noted that plaintiff had tenderness in the sacroiliac area and mild spasms in the lumbar area.  Her knee and ankle reflexes were normal.  He stated, "leg raise pos for pain."  (Tr. 655).

In December she had an exacerbation of back symptoms.  On the 7th, she had diffuse lumbar pain and spasms, but negative straight leg raise testing.  She could not heel to toe walk, her sensation was diminished, she had a stooped gait, and her deep tendon reflexes were only trace.  (Tr. 642).  It is at this visit that Dr. Adams indicated that he reviewed Dr. LaClair's restrictions and thought they "seem[ed] appropriate."  (*Id.*).  On December 15th, objective examination revealed moderate spasms in the lower lumbar region, normal reflexes but sensory loss in the right leg and 4th and 5th toes on the right foot.  Leg raise was positive for pain. (Tr. 653).

In 2016, she continued to experience some back pain.  Though she was found to have numbness in her right thigh, calf, and on some of the toes on her right foot, she did not have any other motor or sensory deficits in her lower extremities.  (Tr. 704, 706, 708).  Her reflexes were normal, too.  (Tr. 709).  And, of the three straight leg raise tests, 2 were negative, (Tr. 704, 709), and one was positive "right more th[a]n left."  (Tr. 706).   Treatment plans in 2016 included the recommendation to walk daily for 15 minutes at a time (Tr. 705), exercise, water therapy in a pool, and stretching every 3 hours (Tr. 707).  On one occasion, on October 31, 2016, she reported that she had no muscle or joint pain, weakness, swelling, or inflammation.  She reported no restriction of motion and no backache.  (Tr. 696).  At that visit, her vascular physician noted that plaintiff appeared healthy and not in distress.  (*Id.*).  It appears plaintiff's condition improved somewhat in 2017.  She continued to have numbness in some of her right toes, but otherwise had normal reflexes and strength, and no motor or other sensory deficits.  (Tr. 699, 701).  Her straight leg raise test in May 2017 was negative bilaterally.[3]  (Tr. 699).

The ALJ also discussed the low back and neck imaging results found in the record.  (Tr. 20-21).  As the ALJ noted, imaging in 2015 showed only mild

---

[3] The ALJ discussed much of this medical evidence.  To the extent the ALJ did not discuss or cite to all the medical evidence in the record, there is no error.  There is no requirement that the ALJ discuss every piece of evidence.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted).

progression compared to September 2013, when she was employed as a nurse. (*See* Tr. 343-44).  In January 2015, lumbar MRI showed post-surgical laminectomy and intradiscal prothesis, endplate osteophytic spur similar to a prior MRI, "very minimal" disc bulge at L4-L5, and mild to moderate dextroconvex scoliosis.  (Tr. 344).  A CT scan provided similar findings.  (Tr. 601).   An April 2015 EMG of the right lower extremity (plaintiff continuously reported numbness in her right thigh, calf, and toes) showed evidence of mild right L5 radiculopathy, but no evidence of denervation, mononeuropathy, or plexopathy.  (Tr. 390).  A December 2015 lumbar spine MRI revealed moderate right neural foraminal stenosis[4] "which may cause right S1 radicular symptoms," and minimal central bulging annulus.  (Tr. 676).  MRI of the cervical spine revealed moderate left C3-C4 neural foramina stenoses, but no spinal stenoses were noted.  (Tr. 678).

The ALJ acknowledged that plaintiff's physicians occasionally found abnormalities in her gait, reflexes, and sensory examinations, as well as positive straight leg raise tests.  (*See* Tr. 21).  However, the ALJ concluded that the

---

[4] The ALJ concluded that there was no evidence of nerve root compressions or lumbar stenosis with accompanying ineffective ambulation.  (Tr. 18).  Plaintiff reads the ALJ's statement here as saying there is no evidence of nerve root compression or stenosis in the record.  The ALJ did not say there was no evidence of these conditions at all.  As there does not appear to be evidence of ineffective ambulation (aside from the few records of abnormal gait, which themselves do not clearly mean ineffective ambulation), it appears the ALJ is correct that there is no evidence of nerve root compression or stenosis with accompanying ineffective ambulation.

majority of records[5] did not demonstrate that plaintiff is disabled, or specifically that she needs a sit/stand/lay option at work.  It appears the ALJ is correct.  Dr. LaClair's opinion is not consistent with the majority of the objective medical records,[6] and does not appear to be supported by the relatively mild or moderate findings on imaging (MRIs and CT scans).  And, it is not clear how those records that contain negative physical findings relate to a limitation that plaintiff have the option to sit/stand/lay during the workday.  It is not obvious that reduced reflexes, a positive straight leg raise test, and reduced sensation in areas of the right leg would dictate that plaintiff needs the option to sit, stand, or lay during the day.  It is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole.  *Albright v. Comm'r of Soc. Sec.*, 2018 WL 5094084, at *7

---

[5] Plaintiff takes issue with the language the ALJ used in referring to the medical records.  The ALJ said, for example, that her gait and range of motion were "repeatedly" normal.  (Tr. 21).  Plaintiff points to records, cited herein, in which her gait and range of motion were found to be abnormal.  Plaintiff implies that the ALJ ignored the negative findings.  This does not appear accurate.  Just before stating that the gait and range of motion findings were repeatedly normal, the ALJ said, "While some gait abnormalities and range of motion deficits are noted on occasion, when examined she repeatedly has normal reflexes, normal ranges of motion in her neck and back, no sensory deficits" and normal strength.  (Tr. 21).  As demonstrated above, the ALJ is correct.  Some findings show abnormalities, but the majority do not.  And though she had some positive straight leg raise tests, many were negative.

[6] The ALJ's decision was based on the objective medical evidence.  The ALJ found plaintiff's subjective complaints "not entirely consistent with the medical evidence."  (Tr. 20).  Plaintiff does not contest this determination.

(E.D. Mich. Feb. 7, 2018) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

Plaintiff contends that no other physician contradicted Dr. LaClair's restrictions opinion, and thus the opinion should have been given controlling weight. She first points to Dr. Adams' statement that he thought the restrictions seemed appropriate. (Tr. 642). But, even considering Dr. Adams' agreement with the restriction, the medical evidence discussed above and in the ALJ's decision is not consistent with the sit/stand/lay option. Plaintiff next argues that State agency psychological reviewing consultant, Dr. Starrett, Ed.D., provided an opinion that is not inconsistent with Dr. LaClair's. Dr. Starrett opined that plaintiff would be moderately limited in completing a normal workday without an unreasonable number and length of rest periods. (Tr. 91). This opinion is inapposite to her physical limitations. First, this is an opinion on mental functioning, not physical limitations. Dr. Starrett explained that this limitation is caused by plaintiff's mood disorder, that she may at times be less able to maintain attention for extended period of time, but that her mood disorder symptoms would not limit her ability to complete repetitive tasks. (*Id.*). Dr. Starrett was not opining on her ability to work despite her physical impairments; this opinion says nothing of whether her physical impairments would require a sit/stand/lay option. Thus, the fact that Dr. Starrett did not contradict Dr. LaClair is of no moment. Second, as a psychological

consultant who is not a psychiatrist, Dr. Starrett was not tasked with evaluating plaintiff's physical impairments, and any attempt to do so on his part would have been improper. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (Stating that a psychologist is not qualified to diagnose physical conditions).

Plaintiff argues that since State agency reviewing physician Dr. Nelson rejected part of Dr. LaClair's opinion because the restrictions were not attainable in a work setting, rather than because the restrictions were not necessary, Dr. Nelson did not contradict the sit/stand/lay opinion. (ECF No. 16, PageID.817-18). However, Dr. Nelson's RFC opinion—the opinion to which the ALJ gave significant weight (Tr. 23)—is not consistent with, and does not support, Dr. LaClair's sit/stand/lay option. (*See* Tr. 88-90). And even if some of these doctors' opinions were consistent with Dr. LaClair's opinion, again, there is still substantial evidence in support of the ALJ's position as discussed above.

Finally, plaintiff says that Dr. Gerold "opined the best pain relief she received was from laying flat or reclining." (ECF No. 16, PageID.818). Plaintiff mischaracterizes Dr. Gerold's notation. On October 28, 2014, prior to the alleged onset date, plaintiff treated with Dr. Gerold. The treatment record has a "subjective" section and an "objective" section. (Tr. 481). It is under the "subjective" heading that Dr. Gerold notes plaintiff's statements and complaints, including that lying down or reclining helped her pain. This is not a statement or

opinion from Dr. Gerold; it is a recording of plaintiff's statement.  In the

"objective" section, he noted tenderness in the L4-L5 facet with extension, left and

right sacroiliac pain, that her left leg was shorter by 2cm, symmetric reflexes,

negative leg raise, but hard for her to get off the examination table except slowly,

and spasms in the lower back.  (*Id.*).  No where in the objective section did Dr.

Gerold indicate that he thought she should lie down or recline to help her back

symptoms.  Hence, this was not a medical opinion the ALJ needed to consider.

And, plaintiff's subjective complaints are not evidence that supports Dr. LaClair's

opinion—the ALJ discounted her subjective complaints, and plaintiff does not

challenge that determination.  (Tr. 20).

Having specifically cited the consistency of the opinion with the other

medical evidence, the ALJ essentially also addressed the supportability of the

opinion, and in this way provided good reason for the weight determination.

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 417-18 (6th Cir. 2011) (That

a treating physician's opinion is inconsistent with the record constitutes a "good

reason" for not giving controlling weight to it.).  It is true that the ALJ did not

discuss the length, nature, and frequency of the treating relationship.  The ALJ's

failure in this regard is not grounds for remand.  As the Sixth Circuit held

in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011)

(quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)),

the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id.* at 804-05.

Even if the ALJ erred in his consideration of Dr. LaClair's opinion, the error is harmless because the ALJ's discussion, in full, provides sufficient explanation and substantial evidence in support of the determination.  "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).

Plaintiff's contention that there is evidence supporting Dr. LaClair's opinion does not diminish the substantial evidence in support of the ALJ's weight determination.  The ALJ addressed the objective medical evidence, and, in light of the other evidence in the record, concluded that Dr. LaClair's sit/stand/lay opinion was entitled to little weight.  Moreover, even if there is substantial evidence in support of Dr. LaClair's opinion, the decision must be affirmed because there is also substantial evidence in support of the ALJ's weight determination.  As noted earlier, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).  The undersigned finds that the ALJ's decision here is within that zone of choice.

The undersigned notes that plaintiff's treating physician argument in the opening brief appears targeted at the ALJ's treatment of Dr. LaClair's opinion only.  In her reply brief, however, she also argues that the ALJ erred in failing to consider Dr. Adams' concurrence with the sit/stand/lay option restriction.  (ECF No. 26, PageID.875-76).  Plaintiff points out that the ALJ did not discuss the fact that Dr. Adams thought Dr. LaClair's restrictions seemed appropriate.  If this argument had been fully raised in the opening brief, the undersigned's conclusion above—that the ALJ did not commit any harmful error in his treatment of Dr. LaClair's opinion—would apply equally to Dr. Adams' concurrence in Dr. LaClair's opinion.  This is so because, as discussed above, substantial evidence supports the ALJ's position that the opinion is inconsistent with the objective medical evidence and diagnostic findings.

        2.    Mental RFC

            a.    Parties' Arguments

Plaintiff's second and final argument for remand is that the ALJ did not properly consider the effect her chronic pain has on her ability to concentrate and sustain activity.  (ECF No. 16, PageID.824).  Plaintiff saw State agency psychological consultative examiner Dr. Mark Zaroff.  Dr. Zaroff believed that plaintiff's medical notes, which documented her chronic pain, were consistent with her self-reports of chronic pain at their meeting.  (*Id.*; Tr. 689).  Dr. Zaroff

concluded that plaintiff's pain seemed to affect her mood and was likely to affect her attention and concentration.  He also stated that she could handle moderately complex information and multi-step tasks, but that she was probably going to need a "supportive work environment."  The ALJ gave Dr. Zaroff's opinion limited weight "due to its vagueness," but also concluded that the combination of plaintiff's pain, narcolepsy, depression, and medication side effects would limit plaintiff to understanding, remembering, and carrying out simple, routine tasks with simple work-related decisions and judgments.  (*Id.*; Tr. 23).

Plaintiff points out that the ALJ gave great weight to Dr. Starrett's reviewing opinion, an opinion which she says is not significantly different than Dr. Zaroff's.  Dr. Starrett opined that plaintiff may need occasional prompting from supervisors to get back on track or calm her down.  And, she may struggle to persist over a prolonged period and become easily frustrated and give up.  (*Id.* at PageID.825; Tr. 91-92).  Dr. Starrett's opinions are supported by plaintiff's treating neurologist, Dr. David Gill.  Dr. Gill noted on multiple occasions that plaintiff suffered from slowed cognition and blunted affect or was bradyphrenic (slowness of thought). (*Id.*; Tr. 409, 440).

She also notes that she treated with therapist Janet Fromhold for her depression.  Ms. Fromhold noted plaintiff's despair and loss of self-esteem.  She

stated that she was impressed that plaintiff "retains the will to survive.  I hope we don't give up on her."  (*Id.* at PageID.825-26; Tr. 628).

Plaintiff characterizes the ALJ's treatment of the medical opinions as accepting most of the restrictions, but rejecting those opinions which appear to preclude all work, regardless of whether the opinion is contradicted by any other medical evidence in the record.  (*Id.* at PageID.826).

In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of the medical opinion evidence relating to her mental functioning.  The Commissioner says that the ALJ properly handled Dr. Zaroff's opinion, as Dr. Zaroff was not a treating physician and his opinion that plaintiff's complaints of pain were supported in a medical note is based on plaintiff's subjective statements.  (ECF No. 23, PageID.865).

b.    Discussion

Plaintiff's argument appears to be about both the ALJ's treatment of the opinion evidence on her mental impairments, and that the mental RFC is inaccurate.

20 C.F.R. § 404.1545 (2012) provides that the Residual Functional Capacity is "the most you can still do despite your limitations."  The ALJ evaluated the medical evidence on plaintiff's mental impairments, including the opinion evidence, and assessed the mental RFC as follows: Plaintiff can

understand, remember, and carry out simple, routine tasks with simple work-related decisions and judgments.  (Tr. 19).  As discussed more fully below, substantial evidence supports the ALJ's conclusion that plaintiff's physical impairments effect mental RFC, but only to the extent found by the ALJ.

Just prior to the alleged onset date, on January 6, 2015, plaintiff underwent a neuropsychological evaluation "due to subjective cognitive difficulties" she experienced after the 2013 car accident.  Neuropsychologist Dr. Amanda Schafer conducted some tests.  In the area of attention, plaintiff was "average" in basic attention and quick processing speed, and on another basic attention task that required numeric sequencing.  (Tr. 323).  However, when the attention tasks had a greater working memory burden involved, plaintiff scored in the low average range.  (*Id.*).  She did well in the memory testing.  (Tr. 324).  Plaintiff's responses to psychological functioning testing showed minimal depression and a mild level of anxiety.  (*Id.*).  Dr. Schafer made the following conclusions: she was not concerned with plaintiff's "ability to continue to manage her employment status or continue driving."  (Tr. 325).  Dr. Schafer was "not making recommendations for restrictions based on cognitive functioning at all."  Dr. Schafer recommended psychotherapy and changing some medication, including Elavil and the Duragesic patch, as those could be causing some mild cognitive slowing.  (*Id.*).  Dr. Schafer's

record, although created prior to the alleged onset date, does not support greater limitations than those given in the RFC.

Plaintiff is correct that on a few occasions, she was found to have a blunted affect, slowed cognition, and (less often) found to be bradyphrenic (slowness of thought). (Tr. 425, 440, 456, 507). In a number of other records (some records the same as those in which blunted affect and bradyphrenic thought process were noted), her behavior, judgment, thought content, mood, and affect were noted to be normal. (Tr. 348, 409, 425, 440, 456, 507, 688). These occasional abnormal mood and cognition findings do not directly contradict the RFC. It is not clear that blunted affect and slowed cognition would dictate greater mental limitations than stated in RFC. The RFC limits plaintiff to only simple, routine tasks with simple work-related decisions.

The ALJ also noted that plaintiff's treatment for her mental impairments was routine or conservative in nature. (Tr. 22). The record contains treatment notes from therapist Janet Fromhold. Ms. Fromhold's records are largely illegible, but it appears that plaintiff saw her on ten occasions between August and November 2015. (Tr. 624-28). At each visit, plaintiff's behavior, thinking, and orientation were normal. (*Id.*). On November 30, 2015, Ms. Fromhold provided a summary of plaintiff's progress through the therapy sessions. Most of this note is illegible, but as plaintiff points out, Ms. Fromhold notes that she was impressed that plaintiff

retained the will to survive in light of her depression.  (Tr. 629).  Ms. Fromhold's statement is rather striking; it gives the impression that plaintiff is not functioning well in daily life.  But the record does not bear this out.  As the ALJ recognized, plaintiff's mental impairments affect her ability to complete a workday, but she is not completely incapable of functioning in an eight-hour day.  Further, to the extent Ms. Fromhold's statement means that plaintiff may have some difficulties in functioning due to her mental impairments, the ALJ accounted for mental impairments in the RFC.

In addition to the treatment notes just discussed, there is opinion evidence from the relevant period.  State agency psychologist Dr. Zaroff examined plaintiff on February 26, 2016.  He rendered an opinion on plaintiff's mental functioning and how her physical impairments affect her mental functioning.  Dr. Zaroff observed that plaintiff appeared to be in pain at their visit. (Tr. 688).  He reviewed a "Medical Note" which included history and physical information that he believed was consistent with her self-report of pain.   (Tr. 689).  He diagnosed major depressive disorder, severe, and alcohol use disorder in sustained full remission. (Tr. 690).  His medical source statement included that plaintiff appeared "quite depressed," and that her chronic pain seemed "to affect her mood and is likely to affect her attention and concentration as well.  Given her background, she does seem to have the cognitive capacity to handle moderately complex information and

multiple step tasks, but she is probably going to need a supportive work environment."  (Tr. 690).

The ALJ gave this opinion limited weight because of its vagueness.  (Tr. 23).  The undersigned agrees that there is some vagueness in the opinion.  It is not clear what Dr. Zaroff means by "supportive work environment."  Moreover, Dr. Zaroff said she would probably need a supportive environment to complete multiple step tasks and handle moderately complex information.  He did not opine that she would need a supportive environment to handle simple, routine tasks— restrictions given in the RFC.  The vocational expert (VE) was asked whether any jobs would be available to a hypothetical individual with plaintiff's characteristics if that individual required a "supportive work environment with frequent redirection by a supervisor."  The VE testified, essentially, that such a restriction would be work preclusive.  (Tr. 56).  The VE did not opine, and was not asked to opine, as to whether needing a supportive work environment without frequent redirection would be work preclusive.  The ALJ agreed with Dr. Zaroff that plaintiff's physical impairments, including her pain, affect her mood and were likely to affect her concentration, so he limited her to simple, routine tasks and simple decision-making.  (Tr. 23).

The ALJ also evaluated the opinion of State agency psychological reviewer Dr. Starrett.  Dr. Starrett provided a mental RFC opinion on March 4, 2016.  He

opined that plaintiff had no limitations in understanding or memory, but that she

had some limitations in sustained concentration and persistence. (Tr. 74). More

specifically, he found no evidence of limitation in her ability to carry out very short

and simple instructions. He found no significant limitation in her ability to carry

out detailed instructions, to perform activities within a schedule and maintain

regular attendance, to sustain an ordinary routine without special supervision, to

work in coordination with others without being distracted, and to make simple

work-related decisions. Dr. Starrett opined that plaintiff was moderately limited in

her ability to maintain attention and concentration for an extended period, and

moderately limited in her ability to complete a normal workday without

interruptions from psychologically-based symptoms and to perform at a consistent

pace without an unreasonable number and length of rest periods. (*Id.*). In regard

to the second moderate limitation, Dr. Starrett further opined: "The claimant's

mood disorder symptoms may at times decrease her ability to maintain sustained

attention for extended periods of time but will not limit her ability to complete

simple repetitive tasks." (*Id.*). The ALJ gave Dr. Starrett's mental RFC opinion

significant weight finding the opinion to be well-supported by the evidence. (Tr.

23).

     Dr. Starrett included "additional explanation" to his RFC opinion. He stated

that plaintiff's mental impairments would preclude multi-step tasks that required

sustained concentration over a prolonged period, but she could perform simple 1-2 step tasks with reasonable independence.   He thought she might struggle with more difficult tasks, particularly during times in which she is depressed or anxious. Starrett also opined that she may struggle to persist over a prolonged period, and that she may become easily frustrated and give up on tasks.  (*Id.*).  Of course, the ALJ limited plaintiff to simple, routine tasks, not difficult or moderately difficult tasks as Dr. Starrett discusses here.  Dr. Starrett also stated that plaintiff may need occasional prompting from supervisors for getting back on track or calming her down.  It is not clear if this statement applies to complex work or simple work.  If it applies to more complex work, it is inapposite as the ALJ limited plaintiff to simple work.  If it applies to simple work, it is not readily apparent that this opinion would render plaintiff disabled.  The vocational expert testified that needing a supportive work environment with frequent redirection by a supervisor would be work preclusive.  (Tr. 56).  There is no indication that occasional prompting from a supervisor, without a supportive work environment, would also be work preclusive.

Since Drs. Zaroff and Starrett's opinions are not opinions from treating physicians, the ALJ was not obligated to give the opinions controlling weight.  20 C.F.R. § 416.927(c).[7]  The requirement for giving good reasons does not apply to

---

[7] As effective on the date of the ALJ's decision.

examining and non-examining sources such as Drs. Zaroff and Starrett.  *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007); *see also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 514 (6th Cir. 2010).  In evaluating how much weight to give examining sources, ALJ's decision must "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec*., 451 Fed Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because the sources were not treating physicians, and because the ALJ explained the reasons for the weight determinations and cited evidence that supports the weight determinations, the explanation for doing so is sufficient to meet these standards.

In short, the ALJ's mental RFC decision is supported by substantial evidence.  While there are some records that indicate plaintiff had a blunted affect and slowed cognition or thought process, other records indicate a normal affect and normal thought process.  Further, the ALJ appropriately handled the opinion evidence, and gave significant weight to the reviewing mental RFC opinion, which supports the determination that plaintiff could do simple, routine tasks with simple work-related decisions and judgments.  Again, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec*., 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).  The undersigned finds that the ALJ's decision here is within that zone of choice.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 10, 2020                    s/Michael J. Hluchaniuk
                                           Michael J. Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 10, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Durene Worth</u>
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov